UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HOWARD BURNS,                        :
                                     :CIVIL ACTION NO. 3:17-CV-418
            Plaintiff,               :
                                     :(JUDGE CONABOY)
      v.                             :
                                     :
NANCY A. BERRYHILL,                  :
Acting Commissioner of              :
Social Security,                     :
                                     :
            Defendant.               :
                                     :

---

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the
Commissioner's denial of Supplemental Security Income ("SSI") under
Title XVI.  (Doc. 1.)  Plaintiff filed an application for benefits
on November 27, 2011, alleging a disability onset date of April 1,
2011.  (R. 381.)  After he appealed the initial denial of the
claim, ALJ Marie Greener denied Plaintiff's claim with her May 6,
2013, Decision.  (*Id.*)  The Appeals Council denied Plaintiff's
request for review and Plaintiff filed a civil action in this Court
(Civil Action No. 1:14-CV-1925).  (*Id.*)  By Order of January 13,
2016, the Court vacated ALJ Greener's May 6, 2013, Decision and
remanded the matter for further proceedings.  (*Id.*)  On November
28, 2016, ALJ Greener held a video hearing and additional evidence
was admitted into the record.  (*Id.*)  Plaintiff was represented at
the hearing and a Vocational Expert testified.  (*See* R. 404.)  ALJ
Greener issued the Decision under consideration here on December
30, 2016.  (R. 381-90.)  She concluded Plaintiff had not been under

a disability as defined in the Social Security Act since November 27, 2011.  (R. 390.)

Plaintiff filed this action on March 6, 2017.  (Doc. 1.)  He asserts in his supporting brief that the Acting Commissioner's determination is error for numerous reasons (Doc. 15 at 3), but with his argument centers on the claimed error that the ALJ failed to properly assess his limitations regarding reaching, handling, and fingering (*id.* at 2-12).  After careful review of the record and the parties' filings, the Court concludes this appeal is properly granted.

## I. Background

Plaintiff was born on April 14, 1967, and was forty-four years old on the date the application was filed.  (R. 389.)  He has a high school education and no past relevant work because his earnings from his past work were below the presumptive substantial gainful activity amounts.  (*Id.*)

### A.  *Medical Evidence*

The Court focuses on evidence of record cited by Plaintiff in support of his argument that the ALJ erred in her assessment of his limitations regarding reaching, handling, fingering and/or feeling.  (*See* R. 4.)  As warranted, the Court also reviews related evidence relied upon by the ALJ and Defendant.

Before and after primary care provider Warren DeWitt, M.D., opined on May 9, 2012, that Plaintiff had significant restrictions

in many areas including his ability to do repetitive reaching, handling, and fingering, his office notes seem to indicate normal physical exam.[1]  (R. 356-360, 370, 824-29.)

On July 10, 2013, Joseph Chun, D.O., of Northeastern Rehabilitation Associates conducted a consultative examination at the request of Warren DeWitt, M.D., Plaintiff's primary care physician.  (R. 723.)  By history, Dr. Chun noted that Plaintiff had sustained a compression fracture at L1 in 1987 and underwent posterior fusion at T12-L2.  In addition to longstanding severe chronic pain in the thoracic and lumbosacral region, Plaintiff complained of intermittent radiating pain along the posterolateral buttock and thigh as well as severe right groin pain.  (*Id.*)  He also reported new neck pain and numbness and tingling of the distal upper extremities.  (*Id.*)  Plaintiff said that his pain had been worsening over the preceding few months, he rated it as 6/10 to 10/10 with an average of 9/10, and he felt some weakness in his arms and legs.  (*Id.*)  Physical examination showed, among other things, that cervical range of motion was moderately restricted, especially extension and left rotation (which caused increased

---

[1]  The office note form has a printed physical exam section which lists areas examined including "Extr/MSK" and "Neuro."  (R. 356-60, 804-29.)  The form directs the provider "check if normal note abnormal in assessment."  (*Id.*)  With few exceptions (*see* R. 818, 820, 822, 823), Dr. DeWitt routinely runs a continuous line through all identified areas of examination and also provides hand-written notes in the "Assessment" portion of the form.  (R. 356-360, 804-817, 819-29.)  The notes are largely illegible.  (*Id.*)

cervical pain) but without any radiating upper extremity symptoms. (R. 724.) Neurologic findings were normal but examination of the extremities showed restricted and guarded range of motion of the bilateral shoulders and hips. (*Id.*) Dr. Chun recorded the following impression: cervical, thoracic, and lumbosacral myofascial pain; lumbar post-laminectomy syndrome; possible lumbar radiculitis; possible cervical radiculitis; and right groin pain of unknown etiology. (*Id.*)

On January 3, 2014, Plaintiff was seen at Barnes Kasson Health Center by Lakshmi Mizin, M.D., on referral of Dr. DeWitt. (R. 750.) It appears that the reason for the referral was related to increased chest discomfort in the midsternal region. (R. 751.) Physical examination findings included tenderness along the spine and, neurologically, Dr. Chun found paraesthesia in both upper arms. (*Id.*)

On January 22, 2014, Plaintiff visited Dr. Chun with the chief complaints of back pain and neck pain. (R. 703.) Plaintiff's specific complaints included "pain in the thoracic and cervical spine diffusely as well as the periscapular musculature." (*Id.*) Dr. Chun noted that trigger point injection of the left periscapular musculature done at the last office visit had been ineffective. (*Id.*) He recorded that Plaintiff's pain continued to limit his activities of bending, lifting, standing, and walking and it caused significant sleep disturbance. (*Id.*) Dr. Chun also

noted that Plaintiff reported intermittent numbness and tingling of the bilateral upper extremities. (*Id.*) Physical examination showed the following: cervical range of motion slightly restricted through all planes with increase of cervical pain; thoracic and lumbosacral range of motion moderately restricted throughout all planes with increase of the lower lumbosacral pain throughout all planes without any lower extremity symptoms; negative supine straight leg raise bilaterally; positive lumbar facet joint loading test bilaterally in the standing position with extension and ipsilateral side bending/rotation causing increase of the low lumbar pain; moderate pain to palpation bilateral lower lumbosacral paraspinals; normal neurologic examination of the lower extremities; normal muscle strength, tone, and reflexes; restricted range of motion of the right hip; right groin and hip pain; and positive provocative maneuvers including patrick's and scour's. (R. 703-04.) Dr. Chun's impression included "[c]hronic back pain since the L1 compression fracture and subsequent T12-L2 fusion in 1987. Neck pain and bilateral upper extremity numbness since March 2013. Many year history of right hip and groin pain." (R. 704.)

On February 7, 2014, Plaintiff reported an increase in bilateral arm and buttock pain to Dr. DeWitt. (R. 963.)

From March through September 2016, Plaintiff regularly reported to Glendon Summers, D.C., that he had dull and aching low back pain which radiated down the right leg to below the knee and

the pain was aggravated by sitting, bending, and reaching. (R. 994-1030.)

**B. *Opinion Evidence***

**1.   <u>Treating Primary Care Physician</u>**

In the Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment form dated May 9, 2012, Dr. DeWitt identified Plaintiff's diagnoses to include degenerative disc disease of the cervical and lumbar spine; symptoms included pain, limited range of motion, and neuropathy related to the cervical and lumbosacral region. (R. 369.) Dr. DeWitt rated Plaintiff's pain at ten on a scale of one to ten and he had not been able to completely relieve the pain with medication without unacceptable side effects. (*Id.*)

In addition to limitations in his ability to sit, stand/walk, and lift/carry, Dr. DeWitt opined that Plaintiff had significant limitation in doing repetitive reaching, handling, fingering, or lifting. (R. 370.) Dr. DeWitt noted that Plaintiff's condition interfered with his ability to keep his neck in a constant position and he could not do a job that required that activity on a sustained basis. (R. 371.) He also opined that Plaintiff's ability to work at a regular job on a sustained basis would be affected by limitations which included pushing and pulling. (*Id.*) Dr. DeWitt assessed Plaintiff's prognosis to be poor, and he noted that Plaintiff was not a malingerer. (R. 369, 372.) He indicated

that the basis for his conclusion was severe neck and low back pain.  (R. 372.)

On January 19, 2015, Dr. DeWitt completed a Physician Verification Form for the Domestic Relations Section of the Susquehanna County Court of Common Pleas.  (R. 789.)  He indicated that Plaintiff's conditions of chronic back pain and degenerative disc disease had affected his ability to work from January 10, 2012, through January 6, 2015, and that Plaintiff would never be able to return to work.  (R. 789.)

On November 11, 2016, Dr. DeWitt completed an Addendum to Questionnaire relating to his May 9, 2012, questionnaire.  (R. 1034.)  He indicated that Plaintiff's condition had worsened and limitations were more severe than what was assessed in May 2012. (*Id.*)  Though partially illegible, the decipherable reasons provided for the changed assessment were increased back pain, unable to lift or walk much.  (*Id.*)

## 2.  **Treating Chiropractor**

On March 2, 2016, Dr. Summers completed a questionnaire in which he provided the following diagnoses and conditions for which he treated Plaintiff: "Low back pain with sacral and pelvic segmental dysfunction[;]  Muscle spasm and disorders of the sacrum[;] Lumbar flexion 35', right lumbar flexion 0'[;] tenderness over the lumbar spine moderate to severe[;] diminished sensory over the left lower leg[;] posture antalgic forward[;] Oswestry Back

7

Pain Outcome Assessment: 70." (R. 889.) Dr. Summers assessed limitations in the areas of standing/walking, lifting/carrying, and found that Plaintiff should alternate sitting and standing every fifteen minutes. (R. 890.) The form did not seek information about any other physical capacities. (*See* R. 889-90.)

On November 23, 2016, Dr. Summers completed a Supplemental Questionnaire. (R. 1041-43.) He indicated that Plaintiff's use of his hands was limited in the following activities: he could never reach or push/pull with either hand; he could occasionally handle/finger with both hands; and he could never feel with his right hand and occasionally feel with his left hand. (R. 1041.)

### 3. **Consulting Examiners**

*a. Lawrence Stepczak, M.D.*

In a January 25, 2012, Disability Evaluation Lawrence Stepczak, M.D., assessed Plaintiff to have chronic back pain with a history of injury and problems with a metal plate. (R. 299.) He completed a Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities and assessed limitations in the lifting, carrying, standing, walking, sitting, pushing and pulling in the lower extremity, and postural activities. (R. 286-87.) He found that Plaintiff had no limitations in performing other physical functions including reaching, handling, fingering, and feeling. (R. 287.)

*b. Gilbert Jenouri, M.D.*

On March 9, 2016, Gilbert Jenouri performed an Internal Medicine Examination and completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical).  (R. 914-23.) Musculoskeletal examination showed the following: Plaintiff had positive single leg raise at twenty degrees; and he had sciatic notch, mid-back and cervical tenderness to palpation.  (R. 916.) Neurologic examination showed decreased sensation to fine touch in the right lower extremity at L4 and the right upper extremity distribution C6-8 as well as 5/5 strength in upper and lower extremities.  (*Id.*)  Examination of the extremities did not reveal muscle atrophy.  (*Id.*)

Dr. Jenouri identified limitations in the areas of lifting/carrying, sitting/standing/walking, use of hands and feet, and certain postural activities.  (R. 918-21.)  Regarding use of hands, Dr. Jenouri opined that Plaintiff could never reach with either hand and he could occasionally handle, finger, feel, and push/pull with both hands.  (R. 920.)

C.    *ALJ Decision*

In her December 30, 2016, Decision, ALJ Greener determined that Plaintiff had the severe impairments of lumbar spine degenerative disc disease status-post T12-L1 fusion and ventricular hypokinesis.  (R. 383.)  She found Plaintiff's neck problems to be either non-severe or a "not medically determinable" impairment. (R. 384.)  ALJ Greener concluded that Plaintiff's impairments,

considered alone and in combination, did not meet or equal a listed impairment.  (R. 385.)

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"): he has

> the capacity to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; sit a total of seven hours in an eight-hour workday, but needs to change positions from sitting to standing after one hour for a brief time, about five minutes, before resuming sitting, but does not have to leave the workplace or station during the change of position.  He can stand or walk a total of one hour in an eight-hour workday, but not more than 15 minutes at a time. Additionally, he can occasionally push or pull with his lower extremities.  The change in position may take place during customary breaks and mealtime.  He can ambulate short distances, less than one block at a time.

(R. 385.)

In her discussion explaining the assessed RFC, ALJ Greener first reviewed Dr. Stepczak's opinion and noted that he examined the claimant on one brief occasion, he did not review the claimant's records, and his opinion was not entirely supported by his exam findings, the other objective evidence of record, or the claimant's treatment history.  (R. 386.)  On these bases, she assigned the opinion only some weight.  (*Id.*)

ALJ Greener assigned Dr. DeWitt's May 2012 opinion limited weight because he was not an orthopedist but was a primary care provider who saw Plaintiff for routine visits and medication refills, and his opinion was not supported by his treatment notes,

objective medical findings, or treatment history.  (*Id.*)  The ALJ also noted that the opinion was somewhat inconsistent with Plaintiff's activities, demonstrated abilities, and reports.  (*Id.*)  Following this assessment, ALJ Greener cited record evidence including positive clinical findings, normal neurological findings, and mild diagnostic findings.  (R. 386-87 (citing Exs. 14F-16F, 23F).)  The ALJ assigned "no special weight" to Dr. DeWitt's January 2015 opinion that Plaintiff would never be able to return to work because that determination was reserved to the Commissioner.  (R. 387.)  She assigned limited weight to Dr. DeWitt's November 2016 opinion that Plaintiff's condition had worsened since May 2012 because the opinion was not supported by clinical findings, treatment history, or treatment notes and was inconsistent with activities.  (R. 388.)

ALJ Greener assigned "only some weight" to Dr. Jenouri's March 2016 opinion because Dr. Jenouri examined Plaintiff on only one occasion, did not review his records, and rendered an opinion that was not entirely supported by the record "i.e., the claimant's activities and negative clinical findings."  (*Id.*)

Dr. Summers' March 2016 opinion was given limited weight because the limitations identified were not entirely supported by the objective medical evidence or Plaintiff's treatment history, and were inconsistent with his activities.  (R. 388.)  ALJ Greener gave Dr. Summers' November 2016 opinion little or no weight for

similar reasons, adding that the record evidenced little or no complaints regarding upper extremity dysfunction. (*Id.*) She added that "Dr. Summers did not start seeing the claimant until 2015 and only treated him for low back pain, which could not reasonably be expected to result in such severe upper extremity limitations." (*Id.*)

In her discussion explaining the assessed RFC, ALJ Greener commented that there was a lot of variance among the opinions of record and went on to note that both cosultative examiners found that Plaintiff could lift and/or carry at least 10 pounds occasionally, Dr. Jenouri and Dr. Summers opined that he could sit for seven hours in an eight-hour day, and Dr. DeWitt, Dr. Summers, and Dr. Jenouri all opined that he could stand/walk at least one hour in an eight-hour day. (R. 388.)

With the identified RFC, ALJ Greener concluded Plaintiff was able to perform jobs which were available in significant numbers in the national economy. (R. 389.) Therefore, she found that Plaintiff had not been under a disability as defined in the Social Security Act from November 7, 2011, through the date of the decision. (R. 390.)

Other relevant portions of the ALJ's Decision will be referenced in the Discussion section of this Memorandum.

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[2]  It is necessary for the

Commissioner to ascertain: 1) whether the applicant is engaged in a

substantial activity; 2) whether the applicant is severely

impaired; 3) whether the impairment matches or is equal to the

requirements of one of the listed impairments, whereby he qualifies

for benefits without further inquiry; 4) whether the claimant can

perform his past work; 5) whether the claimant's impairment

together with his age, education, and past work experiences

preclude him from doing any other sort of work.  20 C.F.R. §§

404.1520(b)-(g), 416.920(b)-(g); see *Sullivan v. Zebley*, 493 U.S.

521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment,

the ALJ makes a finding about the claimant's residual functional

---

[2]  "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less than 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 423(d)(2)(A).

capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. 389-90.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third

Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.

1979).  In *Cotter*, the Circuit Court clarified that the ALJ must
not only state the evidence considered which supports the result
but also indicate what evidence was rejected: "Since it is apparent
that the ALJ cannot reject evidence for no reason or the wrong
reason, an explanation from the ALJ of the reason why probative
evidence has been rejected is required so that a reviewing court
can determine whether the reasons for rejection were improper."
*Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an
exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v.
Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final
decision if it is supported by substantial evidence, even if the
court would have reached different factual conclusions.  *Hartranft*,
181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d
1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings
of the Commissioner of Social Security as to any fact, if supported
by substantial evidence, shall be conclusive . . .").  "However,
even if the Secretary's factual findings are supported by
substantial evidence, [a court] may review whether the Secretary,
in making his findings, applied the correct legal standards to the
facts presented."  *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d
Cir. 1983) (internal quotation omitted).  Where a claimed error
would not affect the outcome of a case, remand is not required.
*Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  Finally,

16

an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's determination is error because the ALJ failed to properly assess Plaintiff's limitations regarding reaching, handling, and fingering. (Doc. 15 at 2-12.) Defendant responds that the ALJ was not obligated to assess manipulative limitations that she determined were not supported by the record. (Doc. 16 at 17.) Plaintiff's argument centers on the ALJ's consideration of opinion evidence, pointing to the opinions of Drs. DeWitt and Summers, treating providers, and Dr. Jenouri, a consulting examiner, who all assessed Plaintiff to have upper extremity limitations. (*See*, *e.g.*, Doc. 15 at 3.)

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. *See*, *e.g.*, *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(c)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Sometimes called the "treating physician rule," the principle is codified at 20 C.F.R. 404.1527(c)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993); *see also Dorf v. Brown*, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's

17

opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).[3]  "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when

_____

[3] 20 C.F.R. § 404.1527(c)(2) states in relevant part:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted); *see also Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988)).

Pursuant to 20 C.F.R. § 404.1527(c)(2), an ALJ must assign controlling weight to a well-supported treating medical source opinion unless the ALJ identifies substantial inconsistent evidence. SSR 96-2p explains terms used in 20 C.F.R. § 404.1527 regarding when treating source opinions are entitled to controlling weight. 1996 WL 374188, at *1. For an opinion to be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 28 U.S.C. § 404.1527(c)(2), "it is not necessary that the opinion be fully supported by such evidence"--it is a fact-sensitive case-by-case determination. SSR 96-2p, at *2. It is a determination the adjudicator must make "and requires an understanding of the clinical signs and laboratory findings in the

case record and what they signify." *Id.* Similarly, whether a

medical opinion "is not inconsistent with the other substantial

evidence in your case record," 28 U.S.C. § 404.1527(c)(2), is a

judgment made by the adjudicator in each case. SSR 96-2p, at*3.

The ruling explains that

> [s]ometimes, there will be an obvious
> inconsistency between the opinion and the
> other substantial evidence; for example, when
> a treating source's report contains an
> opinion that the individual is significantly
> limited in the ability to do work-related
> activities, but the opinion is inconsistent
> with the statements of the individual's
> spouse about the individual's activities, or
> when two medical sources provide inconsistent
> medical opinions about the same issue.  At
> other times, the inconsistency will be less
> obvious and require knowledge about, or
> insight into, what the evidence means.  In
> this regard, it is especially important to
> have an understanding of the clinical signs
> and laboratory findings and any treatment
> provided to determine whether there is an
> inconsistency between this evidence and
> medical opinions about such issues as
> diagnosis, prognosis . . . , or functional
> effects.  Because the evidence is in medical,
> not lay, terms and information about these
> issues may be implied rather than stated,
> such inconsistency may not be evidence
> without an understanding of what the clinical
> signs and laboratory findings signify.

SSR 96-2P, 1996 WL 374188, at *2.  The ruling further provides that

additional development may be needed to determine the appropriate

weight assigned a treating source opinion, "for example, to obtain

more evidence or to clarify reported clinical signs or laboratory

findings." *Id.* at *4.  In contrast to those cases where the record

is adequately developed, SSR 96-2p specifically states that the ALJ or Appeals Council "may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not consistent with the other substantial evidence in the case record." *Id.*

The ruling reinforces the need for careful review an ALJ's decision to discount a treating source opinion, with particular attention paid to the nature of the evidence cited as contradictory. Consistent with SSR 96-2p's explanation of regulatory terms, Third Circuit caselaw indicates that "lay reinterpretation of medical evidence does not constitute 'inconsistent . . . substantial evidence.'" *Carver v. Colvin*, Civ. A. No. 1:15-CV-00634, 2016 WL 6601665, at *16 (M.D. Pa. Sept. 14, 2016)[4] (citing *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978); *Frankenfeld v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 29-30 (3d Cir. 1986); *Ferguson v. Schweiker*, 765 F.2d 31, 36-37 (3d Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. Railroad Retirement Bd.*, 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 58-59 (3d Cir. 1979);

---

[4] Magistrate Judge Gerald B. Cohn's Report and Recommendation was adopted by United States District Judge Sylvia H. Rambo on November 7, 2016. *Carver v. Colvin*, Civ. A. No. 1:15-CV-0634, 2016 WL 6582060 (M.D. Pa. Nov. 7, 2016).

*Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979)).  Thus, the reviewing court should disregard medical evidence cited as contradictory if it is really lay interpretation or judgment rather than that of a qualified medical professional.  *See*, *e.g.*, *Carver*, 6601665, at *11.

Here the ALJ generally pointed to evidence of normal neurologic findings as well as treatment notes and objective findings which she determined to be unsupportive of the opinions reviewed.  (R. 386-87.)  ALJ Greener's opinion review contains only two specific findings about Plaintiff's upper extremity limitations, both stated in the context of her review of Dr. Summers' November 2016 opinion:  she stated that "the record evidenced little or no complaints regarding upper extremity dysfunction" and concluded "that low back pain . . . could not reasonably be expected to result in such severe upper extremity limitations."  (R. 388.)

Because the ALJ cited no specific reasons to reject the upper extremity limitations assessed by Drs. DeWitt and Jenouri (*see* R. 386, 387), the Court considers the reasons provided in the broader context of all opinions assessing such limitations.  The Court's review of the record shows that Plaintiff regularly reported to Dr. Summers over a six-month period in 2016 that his back pain was

aggravated by activities which included reaching.[5]  (*See* R. 994-
1030.)  The evidence set out in the Background section above also
shows that Plaintiff complained of upper extremity problems to Dr.
DeWitt and Dr. Chun and in some instances clinical findings
supported his subjective complaints.  (*See*, *e.g.*, R. 704, 723,
963.)  Thus, the ALJ's statement that "the record evidenced little
or no *complaints* of upper extremity dysfunction" (R. 388 (emphasis
added)) is not supported by the record and is not a valid reason to
discount assessed upper extremity limitations.  The ALJ's specific
finding about the implausibility of back pain being the basis for
the assessed upper extremity limitations is also problematic in
that she made the finding without citation to evidence which
discounts a correlation between back pain and advised limitations
regarding reaching, handling, and fingering.  Therefore, the ALJ
appears to have employed lay opinion in arriving at this
conclusion.  This she cannot do pursuant to well-established Third
Circuit precedent.  *Morales*, 225 F.3d at 317; *Plummer*, 186 F.3d at
429; *Frankenfield*, 861 F.2d at 408.  (R. 388.)

---

[5]  Defendant posits that Dr. Summers' notes indicating that
Plaintiff reported that his pain was aggravated by reaching "more
fairly may be read to suggest issues reaching with Plaintiff's
legs."  (Doc. 16 at 23 (citing R. 994, 997, 1000, 1003, 1006, 1009,
1012, 1015, 1018, 1021, 1024, 1027, 1030).)  This suggestion does
not square with Dr. Summers' upper extremity limitations assessed
in his November 2016 opinion (R. 1041).  Further, ALJ Greener did
not make such a finding and, therefore, this rationale is not
appropriately considered on review.  *See*, *e.g.*, *Fargnoli*, 247 F.3d
at 42.

Furthermore, ALJ Greener relied in part on the consistency of findings in opinions in assessing Plaintiff's RFC. (R. 388.) Although three examining acceptable medical sources, two of whom were treating providers, opined that Plaintiff's ability to reach, handle, and finger were limited (*see* R. 370, 920, 1041), when ALJ Greener identified limitations about which opining sources agreed, she did not acknowledge the agreement among Dr. DeWitt, Dr. Summers, and Dr. Jenouri on the reaching, handling, and fingering limitations. *(See* R. 388.) The only opinion which did not assess such limitations is that of consulting examiner Dr. Stepczak who examined Plaintiff in January 2012, which is before he reported upper extremity problems. *(See* R. 704, 723, 287.)

For all of these reasons, the Court concludes the ALJ erred in rejecting the upper extremity limitations opined by Drs. DeWitt, Summers, and Jenouri.

The Court is not persuaded otherwise by Defendant's argument that Plaintiff's reports that reaching aggravated his pain are subjective complaints that do not constitute clinical indications. (Doc. 16 at 24.) Defendant quotes *Morris v. Barnhart*, 78 F. App'x 820 (3d Cir. 2003) (not precedential), for the proposition that memorialization of subjective complaints "does not elevate those statements to a medical opinion." *(Id.* (quoting 78 F. App'x at 824-25 (citing *Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996)).) While Defendant's observations are true, they do not

24

resolve the issue before the Court because Defendant cites no authority which supports the proposition that a treating or examining medical source may not credit subjective complaints when assessing an individual's limitations. *Morris* explained that "[a]n ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted." 78 F. App'x at 825.

Applying this principle here, ALJ Greener generally pointed to evidence of normal and mild diagnostic testing, normal neurologic findings, as well as treatment notes and objective findings which she determined to be unsupportive of symptoms alleged and opinions reviewed, but she did not specifically discount upper extremity complaints in her Decision. (*See* R. 385-88.) To the extent she addressed them directly, it was in the context discussed above where she cited "little or no complaints regarding upper extremity dysfunction" and the unreasonableness of a correlation between back pain and upper extremity limitations as reasons to discount a treating source opinion. (*See* R. 388.) Neither of these statements properly discount Plaintiff's subjective complaints of upper extremity complaints. Therefore, to the extent the opinions at issue may have been based on Plaintiff's subjective complaints, *Morris* does not support discrediting the opinions. 78 F. App'x at 825.

Finally, because Plaintiff has shown that the error is harmful (Doc. 15 at 10-12), this matter is properly remanded for further consideration, in particular for development of the record regarding the upper extremity limitations assessed by Drs. DeWitt, Summers, and Jenouri. This development most likely must encompass recontacting the providers who assessed Plaintiff to have upper extremity limitations. In certain circumstances, the duty to develop the record may entail a duty to recontact a medical source to obtain additional information, such as when the source's report "contains a conflict or ambiguity that must be resolved," "does not contain all the necessary information, or does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing 20 C.F.R. § 416.912(e)(1) and 20 C.F.R. § 404.1512(e)(1)).

## V. Conclusion

For the reasons discussed above, Plaintiff's appeal is properly granted and this matter is remanded to the Acting Commissioner for further consideration. Reconsideration as directed above should be accomplished in an EXPEDITED manner given the procedural posture of this case. An appropriate Order is filed simultaneously with this action.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: October 9, 2017